Good morning. Our last case for today is Park Property Associates versus the US Appeal Number 172279. Mr. Toto, you can begin. Toto, and may it please the Court. The trial court committed three principal errors in this case. First, the trial court erroneously concluded that HUD was in privity with the owners of the property. The renewal contract, which is, while it's called a renewal, is actually a new contract, as is specified in Section 512 of the MARA statute. It says, defines a renewal contract as a new contract. That new contract had as the counterparty for the owner, Park Properties, the New York State Housing Agency, which is a State agency. It's not a Federal agency. Was this different from the original HAP contracts in this case? Yes, it is different. The original HAP contracts were between the owners and HUD. Directly? Directly. There is an intervening statute, the MARA statute of 1997, Multi-Family Assisted Housing Reform Act. One of the purposes of that statute, as is listed in Section 511A.12, was to permit HUD to delegate certain of its administration functions to State agencies. And that's what happened here. And one of the provisions allowed HUD to offer renewal contracts under Section 524A.1 under such terms as HUD deems appropriate. So before, are you saying that before that statute, the contract always had to be between directly with HUD? I don't know in all cases, but I know that the contract in this case was directly with HUD. So there was an original contract from 1978 to 2008, a 30-year term. There was a new contract entered into, short-term bridge contracts in 2009, 2010, full 20-year renewals in 2011. In between them, you had this MARA statute, different legal structure. Also in the middle, you had the 1994 amendments to the Housing Act, which lowered the rate of annual rent increases. So in the Park Properties I litigation, earlier litigation in the Court of Federal Claims, the Court had found that those 1994 amendments that slowed the rate of rent increases constituted a breach of the original HAP contracts, awarded an award of money damages, which was entered in 2014. Plaintiff's theory, and which largely adopted by the trial court, was that HUD's contract, the renewal contract, should have been reformed to be the rent that would have been in existence had there been no breach of the original HAP contract. The problem with that theory is that, first, the trial court in the Park Properties I litigation did not order any change to the terms of the original HAP contract. All it did was order money damages. And, in fact, it couldn't have done anything else under the Tucker Act. That's not within court's jurisdiction to change those terms of the original HAP contract. And, in fact, the trial court in the Park Properties I litigation specifically considered a claim by the plaintiffs in that case that, hey, we have a breach of the original contracts, we should expand that to breaches, damages for the lower rent under these renewal contracts that we just signed. And the trial court rejected that claim. The trial court said, oh, no, that would not be foreseeable because this voluntary breach of the original HAP contract. The trial court, they hadn't pled that. The trial court in Park Properties I rejected any claim for damages on the renewal contracts. However, plaintiffs then came for 2015, filed suit in the Court of Federal Claims in the Park Properties II litigation. It's not, I don't know if it was a claim before the Court of Federal Claims, but there seems to be this suggestion in the briefing that there was some sort of issue to which the parties had to enter into these renewal contracts, that they were sort of pressured and they were under pressure. Well, our understanding of Is that in the briefs? There's something to that effect? Plaintiffs make that suggestion. However, that would only come into play as a defense to, we had filed a motion to dismiss, saying this was a voluntary renewal, there is no causation, even if this rent is lower than it would have been but for an original breach of the contracts and the issue of the new contracts, you voluntarily entered into these renewal contracts and therefore, there's a break-and-shut causation, no foreseeability. Their defense to that would be, oh, we signed that contract under duress, we had no economic choice but to enter into the renewal contracts. The Court of Federal Claims did not take any evidence on that claim. The Court of Federal Claims did something different. The Court of Federal Claims said, I'm just going to reform the renewal contracts, I'm not even going to reach the issue of whether there was duress into entering into the renewal contracts, which would be a defense to our motion to dismiss on the grounds that the renewal was voluntary. The Court didn't even reach that question. All the Court did was simply reform or award damages for breach. It described it variously in different points of the opinion. So it didn't reach that question. It should have had to reach that question, but it didn't. Going back to the privity issue, the trial court made much of the fact that the government had signed the contract and had taken, that HUD had taken action in enforcing, was involved in the contract. How do you respond to that? Okay, so we respond first that the contract plain language states very explicitly who the parties are and that the contract administrator is the New York State Housing Agency, not HUD. HUD signed it for, HUD's signature was for a very specific purpose, which is under Paragraph 2 of the contract, HUD is the one obligating the federal funds. Obviously you can't have a state agency obligating the federal funds. That was the purpose of HUD's signature. Also in Paragraph 11 of the contract it states there is a annual contributions contract between HUD and the state agency. So if the state agency fails to meet its obligations to the owner, HUD, at its discretion, could step in to cure default. But it does not create any direct privity between HUD and the owner. In fact, other places in the contract make that even more explicit. For example, the signature block for the contract administrator, it says contract administrator, this is at page 49 of the appendix, it says contract administrator, parentheses, HUD or PHA, public housing agency. It's signed by the public housing agency, it's signed by the New York State Agency. So on the plain language of the contract, HUD is defined as not being the administrator. Then the question becomes, well, it should be implied somehow that HUD has assumed privity even though the plain language of the contract said otherwise. Based on our citations to this Court's decisions in the Siena Gardens, Housing Corporation of America, that's also not the case. Those cases say that for the United States to have privity of contract and must assume direct, unavoidable liability language in those decisions, HUD has not done that here. It has done quite the opposite. The trial court's reasoning to distinguish that is unavailing. So the trial court cites, I believe it's 24 CFR 402.5, talking about HUD's renewal. It says, well, the public housing agency didn't initiate the renewal, therefore HUD is in privity. The problem is that neither the MARA statute nor the regulations can say anything about the public housing agency being able to initiate the contract and that would not make sense as a result since you'd be in a position of a state housing agency initiating an award of federal funds. That doesn't make sense. Also, MARA itself, 524A1, says that the renewal of the contract is at the request of the owner and then HUD shall offer. Well, if it's at the request of the owner, again, it's not the public housing agency initiating the process. So that reasoning from the trial court was an error. The same language in 524A1 says that HUD may issue the contract in terms it finds to be appropriate. It does not say that HUD has to be the party in interest in the contract. It just says HUD can make the contract. Now, this Section 8 contract is a form contract. That's the standard language. But it also has language that makes the housing – public housing agency the party, not HUD. They haven't – plaintiffs have not shown the trial court's reasoning does not support a conclusion that HUD was obligated to make itself a party. The trial court relied on paragraph 482 of the renewal contract that said if HUD is the contract administrator, it may designate a public housing agency to fill those functions. And the trial court said, well, that must mean that HUD is really in privity. That reasoning is, again, incorrect because that assumes an incorrect premise that HUD ever was the contract administrator. HUD never was the contract administrator for the renewal contract. It was the contract administrator originally under the original contract, but the renewal contract, even though it's called a renewal, is a new contract as defined in MARA Section 512, subsection 12. And one of those terms in this contract was a different contract administrator, the New York State agency. Therefore, the trial court's decision regarding privity was in error. The contracts – even if the court were to find jurisdiction, find privity, the trial court's decision regarding breach was also in error. The foundation of that was the principle that the – because there was an award of damages for the original contract that the but-for rents for that need to carry over to the renewal contract, and there's no basis for that. Paragraph 5B of the renewal contracts explicitly rejects any rent term from the prior contracts as being applicable. Furthermore, there was no modification of the rent levels under the original contracts, even in the Park Properties I decision. Also, the Park Properties I judgment did not become final, I believe, until 2014. Those renewal contracts were entered into between 2009 and 2011. Therefore, there cannot have been a mutual mistake as to an existing fact at the time those contracts were entered. There was no stipulation. There was no final judgment as to what the but-for rent levels would have been. All there was that the plaintiffs point to is a 2006 decision finding summary judgment as to liability in the Park Properties I litigation as to the original contract by definition that wasn't a final decision, did not set forth any but-for rent level, did not apply to any renewal contract in the Park Properties I court, actually specifically denied that there would be any applicability to a renewal contract. Lastly, even if the trial court were to reach the issue of damages, the trial court's measure of damages was incorrect. There's two components to the damages component. One is the baseline level of rent. That's wrong. Even if you assume that the trial court was correct that the baseline levels from the prior original HAP contract should have carried over, they're too high because MARA emplaces caps on the original rent. For renewals under 524A, which is what they did in the real world, would be a market rate. The but-for levels would have been above market rate. That's too high. For renewals under 524B, plaintiffs say they would have been in the but-for world. There's a cap based on the budget for the unit, for the building. The problem is plaintiffs never submitted any evidence as to what the budget was for the building. We noted that before damages briefing for a trial court. Trial court noted that we said that, but still awarded plaintiffs everything without imposing any cap. That's a windfall. That's beyond what is permitted even under the standards for summary judgment. I see them in my rebuttal time, and I will wait for them. Thank you. Mr. Gentile, is that how you pronounce your name? Thank you, Your Honor, and may it please this honorable court. To hear the government tell it this is a mundane case, the government would have this case. This court believed that this case is about commonplace legal issues like privity or mutual mistake, but the reality is exactly the opposite. This is a tremendously important case, and it's not just because of the number of dollars at issue. At stake in this case is the very reason for the existence of the United States Court of Federal Claims and for this court's oversight of the Court of Federal Claims. Can HUD get away with simply ignoring binding orders of the Court of Federal Claims? That's exactly what HUD did. For eight years, HUD simply refused to apply to my clients' contracts the proper rents as the Court of Federal Claims ordered in 2006. Then, in a later date, HUD imposed on my clients, yes, under duress, renewal contracts that blatantly violated that 2006 order. Specifically, those renewal contracts used as the preexisting rents numbers that HUD calculated using the exact same methodology that the Court of Federal Claims in 2006 found to be legal. So in the proceedings below in this action, none other than the former Chief Judge of the Court of Federal Claims, now Senior Judge Lauren A. Smith, saw this case for what it really is. Senior Judge Smith recognized, I'm going to quote now, HUD is relying on the fact that it did not effectuate the judicially required rent adjustments prior to entering into the renewal contracts to argue that those adjustments are not required for the current contracts it issued. HUD disregarded a court order from the Court of Federal Claims in 2006, and Senior Judge Smith said things right. He did so in an exercise for the Court of Federal Claims' powers in equity incidental to a claim for money damages, which goes all the way back to Oliver Wendell Holmes. And that's where this case begins and ends. Now, remarkably, our Justice Department, in its opening brief, and now in its opening argument, completely ignores Senior Judge Smith's holding. The government goes back to making hyper-technical, legally formalistic arguments about things like privity and breach of contract. I want to interrupt you just a minute on the privity issue. Our court has some very strongly worded cases that involve situations, or what appear to be contracts, that are similar to the renewal contract here. Cases like Katz and some of the other cases. How do you address those? How do I distinguish those cases? There's privity in this case between HUD and my clients for two big reasons. The first reason is that this case exists only because of the previous case, in which privity was never disputed. Senior Judge Smith's opinion... Let me tell you one thing. There was a different situation in the previous case, where I think the HUD was a direct contractual arrangement, whereas here you had the housing, you had the PHA in the picture. Judge Schall, I posit that that fact actually supports my client's position. If you look at section 4D1 of the renewal contract, it says, and I'm quoting again... 4D1? Yes. The purpose of the... Can you take a cite? I can get you a cite for the record. I don't have that in front of me right now, Your Honor. The words are, the purpose of the renewal contract is to renew the expiring contract. It's appendix 198. Thank you very much, Your Honor. I appreciate that. The purpose of the renewal contract is to renew the expiring contract for an additional term. So the renewal contract would not exist but for the existence of the previous contract, and in that previous contract, there's undisputed privity between HUD and my clients. This litigation would not exist. You're saying that even though there were different parties in the previous contract, you're saying that because this was a renewal contract, the privity from the previous contract flowed into this one? Without question, and that's just the beginning. The next part is that by statute, by regulation, and by a plethora of terms of the renewal contract, there exists privity between the United States and my clients. We can go one at a time. It's in our brief on pages 28 through 30 in the red brief. But the statutes authorize only the Secretary of Housing and Urban Development to execute the contracts. That's 42 U.S.C. 1437F. The Secretary is authorized to enter into such contracts. Second, there's regulations that speak on this point. 24 CFR 402.5A says that HUD will offer to renew project-based assistance. Third, the terms of the contract, there's multiple terms of the contract itself that speak to this. If a PHA breaches the contract, HUD will step in and correct the default. Section 482 of the contract, that's 137 in the appendix, states that HUD shall remain a party to the contract. That's stated again in paragraph 4 of the renewal contract, section 2 called parties. Privity is not about who signs on which dotted line. We don't look at, oh, there's a signature block and it says this. We look at the nature of the relationship between the parties. And that's spelled out by HUD's active role in governing these contracts, for which you do not even need to look at the facts as a matter of law based on the statutes, the regulations and the contractual provisions that I've cited. HUD has privity with the United States. This is a straightforward case. And Senior Justice Smith expected that the quantification of damages would be straightforward as well. So Senior Justice Smith ordered the parties to stipulate as to the amount of damages. We tried to stipulate with the government. That didn't work out. So we filed with the Court of Federal Claims our straightforward mathematical calculations of the damages. Can I ask you? I'm going to interrupt you. Go ahead, please. I was thinking as you were talking about the National Leased Housing Association case, which is a 1997 decision by this court. And there, when they talk about privity of contract, there's three requirements. The third of which is the contract stated that the government would be directly liable to the vendors for the purchase price. How does that factor? We have a provision that I've just cited, which is paragraph 11 of the contract, which states that if the PHA breaches the contract, whatever the role of the PHA might be, in this case it's extremely limited, HUD agrees to correct any default by the PHA and to continue the housing assistant payments. HUD steps in. HUD will be liable. Whatever front the PHA is carrying out for HUD's purposes, HUD is there to make the payments. And that's the foundation of the Section 8 program. But isn't that talking, Mr. Gentile, about the situation where if the PHA defaults or is unable to perform, HUD will step in to the shoes of the PHA? That sounds like assuming liability to me. Well, yeah, but that didn't happen here. It didn't happen here, but contractually they're obligated. Contractually, HUD is on the hook, and HUD knows it, and this is in HUD's budgets, and this is the very foundation of the Section 8 housing program, which is the very foundation for how low-income people get housing in this country, that there's a guarantee from HUD that HUD is there to make sure that these people can stay in housing. But isn't that directed to a situation where, in your words, HUD would be on the hook if something happened, which didn't happen here? It doesn't matter whether or not it happened in this particular case. What matters is that HUD is liable, that HUD has that liability, and I believe that satisfies the prong of the case that Judge Stoltz cited. The third element, though, in this National Leased Housing case doesn't have a condition predicate. It just says the contract states the government is liable. And I believe that this contract does, Your Honor.  I don't see a distinction between that at all. I think that HUD is on the hook here, and who knows what could happen in this case or many, many other similar cases. Understand that we're here today because these clients, Park Property and Valentine, had the wherewithal to withstand what HUD was doing. There were countless other property owners in the same situation who just folded and gave in to whatever HUD wanted because they didn't have the wherewithal to withstand this. So I believe that's important to keep in mind as well. Understand that the issues that my honorable adversary is discussing concerning mutual mistake, breach of contract, are all alternative holdings. They are alternative holdings to Senior Judge Smith's primary holding, inequity, that HUD disregarded a court order and that Senior Judge Smith was going to set it straight. Yes, the issues are intertwined, and the reason for that is because HUD's having disregarded the Court of Federal Claims 2006 order permeates this entire case. Where does the Court of Federal Claims get the authority to act in equity? The Court of Federal Claims has a longstanding authority to act in equity incidental to a claim for money damages, which is what this is. The Court of Federal Claims can't do things like issue an injunction, but the ability of the Court of Federal Claims to reform a contract incidental to a claim for money damages is well established, and we go through that in our brief, and it goes all the way back to Oliver Wendell Holmes. I'm happy to discuss issues regarding damages. Senior Judge Smith wanted a straightforward mathematical calculation of damages. What is the case that gives them this authority? The authority in equity that we were discussing, Your Honor? Okay, I can take a look at a few cases on that point. Let's talk about United States v. Milliken imprinting from 1906 by Oliver Wendell Holmes, Jr. That's from the United States Supreme Court held that the predecessor courts to the Court of Federal Claims as to trial jurisdiction had jurisdiction in equity and it could exercise its powers in equity to reform a contract. That was affirmed again by the Court of Claims in 1979 on Bank, affirming the Court of Claims jurisdiction in equity and its power to exercise equitable remedies, including reformation of a contract, and in Ambase Corp. v. United States, that's from 2004. I'm sorry, what was that case, Mr. Gingrich? That's Ambase Corp. v. United States, 61, Fed Claim 794. These were all on page 21 of our red brief. In that case, it was held that the Court of Federal Claims and its predecessor courts have always possessed the power to assert jurisdiction over claims which sound in equity but which are claims for money damages against the government rather than a claim for non-monetary relief. Thus, the Court has relied on reformation of contract as the basis for a money judgment. When Senior Judge Smith asked the parties to stipulate as to damages, we presented a straightforward mathematical calculation to the court. The government replied with a legal brief. This legal brief raised a grab bag of legal arguments that had never been raised before and were not properly before the court at that time because Senior Judge Smith never asked for it. He asked for a straightforward mathematical calculation of damages. I feel we need to address two of those issues. First, the government attempted to argue that these renewal contracts were not exception contracts under Section 524B1 of MARA. The government seems to think that if these renewal contracts fall under Section 524A of MARA, then HUD would be free to apply the 1994 amendments to these contracts. Even that assertion is wrong because the original contracts that were renewed in this case themselves predated the 1994 amendments. But we don't even need to go there because Senior Judge Smith correctly found that under MARA these renewal contracts could only be exception contracts under Section 524B1 of MARA. It's undisputed that these projects were not financed by a mortgage insured by HUD under the National Housing Act, and that means that these projects are not eligible multifamily housing projects under Section 5122C of MARA. The only way they could be treated as such is if the plaintiffs requested that and they never did. So they could only be renewed, these renewal contracts could only be renewed as exception projects under Section 524B1 of MARA. The second issue raised as to damages was the applicability of the OCAFs to the portion of the rent attributable to debt service. The government argued that it should be applied only to operating costs. That was wrong once again because these are exception projects under MARA. We've got a section of MARA, 524G3A, which explicitly includes debt service in the OCAFs in the case of exception projects. Senior Judge Smith justly enforced against HUD the orders of the Court of Federal Claims that HUD disregarded. Abraham Lincoln's vision of justice against the government in favor of citizens requires not only that the Court of Federal Claims but also that the government obeys and be bound by these orders. There's no question that Senior Judge Smith acted properly when he enforced against HUD court orders that HUD chose to ignore. As I run out of time, one administrative matter. There is a cross-appeal here. We, of course, assert that cross-appeal, but we do rest on the briefs as to that cross-appeal, and I have reserved no rebuttal time as to it. Thank you, Your Honor. Mr. Toder, you have three minutes for rebuttal. Thank you, Your Honor. I guess I'll start with the contract. So plans are relying on paragraph 11 as claiming that this puts HUD on the hook for contractual liability. That's wrong. Paragraph 11 says that in the event of the default by the public housing agency, HUD shall take any action HUD determines necessary for the continuation of housing assistance payments to the owner in accordance with the renewal contract. That gives HUD the option of whether to step in. It doesn't obligate HUD to assume any kind of liability at all. It just gives HUD that option. That directly contradicts plaintiff's claim that that provision makes HUD directly liable. With respect to the Court of Federal Claims... If HUD did step into the shoes of the PHA, in that situation, you would say there was privity? If they chose to act by stepping in as contract administrator, they could also act by just giving more money to the state agency. It doesn't say how HUD would take action. But if HUD did affirmatively step into the shoes of the PHA and do what the PHA would do and contract directly, then you'd be liking the first... Yeah, if they chose to do that, then they would. Nothing like that happened here. They could if they wanted, but there was no default. That didn't happen. With respect to the Court of Federal Claims' equitable jurisdiction, the case they're relying to Milliken Printing from the Supreme Court from 1906, I believe that ultimately dealt with... I don't think Justice Holden even found a contract, but in the Hercules case from the Supreme Court in 1996, the Supreme Court made quite clear, as this Court also found in the Lumberman's decision that we cite in our papers, that implied-in-law contracts are not within the jurisdiction of the Court of Federal Claims. The kinds of cases such as AMBASE they're talking about are reformations for mutual mistake, for existing fact, which this Court has recognized under Dairyland Power Co-op. Yes, you can do that for mutual mistake. That's not what happened here. This isn't any mutual mistake. Everyone knew what the rent being offered was. There wasn't any mistake as to what the offer was or why it was being made. So mutual mistake of fact doesn't apply here. If anything, this would be implied-in-law contract, if that's what the basis of the Court's decision was, as opposed to breach of contract or reformation for mutual mistake. In any case, implied-in-law is not within the Court's jurisdiction. Plaintiffs claim we waive that. You can't waive subject-matter jurisdiction, of course. And we are, again, interpreting the Court's opinion as to things the Court could actually do, breach or reformation for mutual mistake. None of those are satisfied. As for MARA, they cite Section 514G. Again, that assumes it's an exception contract. Plaintiffs in the real world renewed under 524A. Even if they had renewed under 514 under 524B, 514G is a budget-based production, not what plaintiffs introduced. They introduced no evidence on that score. For those reasons, we respectfully request that the Court reverse the decision of the Court of Federal Claims denying our motion to dismiss and granting the plaintiffs' motion for summary judgment. Thank you. The case is submitted. We thank both counsel for their argument.